Approved: _____  **13 MAG 1811**
         Kan M. Nawaday
         Assistant United States Attorney

Before:   HONORABLE JAMES L. COTT
            United States Magistrate Judge
            Southern District of New York

*Case No. 13-8337-JMH*

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

      - v. -

WILFREDO PAGAN,
   a/k/a "Cabeza,"
RAMON QUINONES,
   a/k/a "Big T," and
SONIA BROWN,
   a/k/a "Sonia Pagan,"

            Defendants.

- - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violation of
18 U.S.C. §§ 1951,
924(c), and 2

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

     VINCENT J. NOBLE, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE

     1.  In or about July 2012, in the Southern District of New York and elsewhere, WILFREDO PAGAN, a/k/a "Cabeza," RAMON QUINONES, a/k/a "Big T," and SONIA BROWN, a/k/a "Sonia Pagan," the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, PAGAN, QUINONES, and BROWN agreed with others to commit a robbery of a business owner of the proceeds of the business owner's businesses, in the vicinity of Lebanon, Pennsylvania.

     (Title 18, United States Code, Section 1951.)

COUNT TWO

2. In or about July 2012, in the Southern District of New York and elsewhere, WILFREDO PAGAN, a/k/a "Cabeza," RAMON QUINONES, a/k/a "Big T," and SONIA BROWN, a/k/a "Sonia Pagan," the defendants, and others known and unknown, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the robbery conspiracy charged in Count One of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the FBI. I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with law enforcement officers and others and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

The Lebanon Robbery

4. Based on my discussions with a cooperating witness ("CW-1"),[1] I have learned the following, in substance and relevant part:

---

[1] CW-1 is currently charged with committing robberies and using firearms in the commission of such robberies. CW-1 has been providing information to the Government in the hopes of entering into a cooperation agreement with the Government and of obtaining leniency in CW-1's sentence. CW-1 has disclosed CW-1's own participation in numerous robberies and the participation of others in such robberies. Where I have been able to, I have corroborated CW-1's information against other sources such as from law enforcement reports, witnesses, and phone records. I have found CW-1's information to be credible and reliable.

2

a. CW-1 described a home invasion robbery in which CW-1 participated with others.

b. CW-1 was given information about a potential robbery target by an acquaintance whom CW-1 knew as "Cabeza." Cabeza told CW-1 about an individual ("Victim-1") who was in the accountancy or tax preparation business and who was believed to have approximately $50,000 to $100,000 in business proceeds at Victim-1's residence, which was located in Pennsylvania (the "Residence"). CW-1 learned from Cabeza that Victim-1 was also the ex-husband of Cabeza's niece (the "Niece") and that the Niece would also be part of the robbery.

c. CW-1 agreed with Cabeza and the Niece to commit a home invasion robbery of Victim-1.

d. On the day of the robbery, CW-1 drove with another individual in a rented car ("Car-1") from the Bronx, New York, to Pennsylvania to commit the home invasion robbery.

e. CW-1 had previously committed other home invasion robberies with the individual who traveled in Car-1 to Pennsylvania with CW-1 ("CW-2"). During some of these previous robberies CW-1 and CW-2 used police impersonation techniques to commit the robberies. CW-1 and CW-2 followed the Niece who was driving in another car ("Car-2") to Pennsylvania to the Residence. With the Niece in Car-2 was an individual whom CW-1 knew as "Big T."

f. When the crew arrived at the Residence, CW-1 and CW-2 knocked on the door of the Residence, while Big T and the Niece remained with the vehicles. When Victim-1 answered, CW-1 and CW-2 falsely introduced themselves as law enforcement agents to gain entry to the Residence.

g. CW-1 and CW-2 carried firearms during this robbery.

h. CW-1 and CW-2 restrained Victim-1 using a plastic tie. Another individual who was in the residence ("Victim-2"), came downstairs and CW-1 and CW-2 also restrained Victim-2 using a plastic tie.

i. CW-1 and CW-2 then searched the Residence and took a safe (the "Safe") and two handguns.

3

        j.   CW-1 and CW-2 then left the Residence and returned to where the vehicles and Big T and the Niece were located. The crew then drove back to the Bronx, New York.

        k.   When CW-1 and CW-2 opened the safe, they learned that it only contained documents.

        l.   Later, CW-1 and CW-2 went to Cabeza's apartment located in the Bronx, New York and informed him that there was no money obtained from the robbery and that all that was obtained were firearms.

     5.   Based on my discussions with CW-2, who is a cooperating witness,[2] I have learned the following, in substance and relevant part:

        a.   CW-2 was part of a robbery crew, whose members included CW-1. The crew committed numerous home invasion robberies using police impersonation tactics.

        b.   CW-2 recalled participating in a robbery where the information about the target of the robbery came from an individual named Cabeza, whom CW-1 knew. CW-2 understood that the victim of the robbery lived in Pennsylvania and was an accountant who was to have proceeds of his business in his home.

        c.   The day of the robbery CW-2 drove with CW-2 to Pennsylvania, following Cabeza's niece, i.e. the Niece, who was driving another car with a male whom CW-2 did not know.

        d.   The crew arrived at the Residence, and CW-2 and CW-1 knocked on the door. Victim-1 answered the door and CW-2 and CW-1 posed as law enforcement to gain entry to the Residence. Inside the Residence was another individual, i.e., Victim-2. CW-1 and CW-2 then restrained both victims.

---

[2] CW-2 is currently charged with committing robberies and using firearms in the commission of such robberies. CW-2 has been providing information to the Government in the hopes of entering into a cooperation agreement with the Government and of obtaining leniency in CW-2's sentence. CW-2 has disclosed CW-2's own participation in numerous robberies and the participation of others in such robberies. Where I have been able to, I have corroborated CW-2's information against other sources such as from law enforcement reports, witnesses, and phone records. I have found CW-2's information to be credible and reliable.

e. While the victims were detained, CW-2 and CW-1 searched the Residence and recovered a safe and two firearms. CW-1 and CW-2 left the Residence, and returned to the Bronx, New York, following the Niece and the unknown male, who were driving Car-2.

f. The crew first went to a storage unit in the Bronx, New York, which was rented by CW-2. There, they opened the safe and discovered that there was no money in the safe. The crew then went to the residence of Cabeza, which was located in the Bronx, New York, to inform him of the results of the robbery.

g. At Cabeza's apartment, the Niece asked CW-2 what would happen with the firearms that were stolen. CW-2 told the Niece that CW-1 and CW-2 were going to keep the firearms. The Niece told CW-2 that was fine and that she would report the firearms as stolen.

6. I reviewed Lebanon, Pennsylvania Police Department ("LPPD") reports relating to an investigation of a home invasion robbery of July 6, 2012, and have learned the following, in substance and relevant part:

a. On or about July 6, 2012, two robbers posing as law enforcement agents went to the residence of Victim-1, located in Lebanon, Pennsylvania. When Victim-1 answered the door, the robbers told Victim-1 that they were law enforcement agents working as part of a drug task force.

b. The robbers then cuffed Victim-1, using a plastic tie. Another individual who was in the Residence came downstairs ("Victim-2"), and the robbers also cuffed Victim-2 with a plastic tie.

c. The robbers then searched the Residence and obtained two handguns and a shotgun. Victim-2 also relayed that Victim-2 saw one of the robbers leave the Residence with a safe.

d. Victim-1 relayed that the firearms that were stolen by the robbers were not Victim-1's firearms but were registered to his ex-wife, "Sonia Brown."

7. Based on the above, I believe that the robbery described by CW-1 and CW-2 is the same robbery reported by Victim-1 as described in paragraph 6 above.

5

8. I have spoken to another FBI agent ("Agent-1") who has spoken to Victim-1. Based on my discussions with Agent-1, I have learned that Victim-1 relayed the following, in substance and relevant part, to Agent-1:

   a. Victim-1 operated two businesses from the Residence: (i) a business which rented household furniture and appliances to individuals and (ii) a tax preparation business.

   b. Victim-1 obtained the items that his household items rental business rented to customers from outside of Pennsylvania.

   c. Victim-1's tax preparation business prepared tax returns for clients who in turn mailed the returns to taxing authorities outside of Pennsylvania.

   d. Victim-1 maintained proceeds of his businesses at times at the Residence.

9. I obtained a photograph of WILFREDO PAGAN, a/k/a "Cabeza," the defendant, from the department of motor vehicles ("DMV") and prepared a photograph array of six photographs, one of which was the photograph of PAGAN (the "Pagan Photograph Array"). I showed the Pagan Photograph Array to CW-1. CW-1 identified the photograph of PAGAN as the person whom CW-1 knew as Cabeza, referenced above in paragraph 4.

10. I obtained a photograph of RAMON QUINONES, a/k/a "Big T," the defendant, from the DMV, and prepared a photograph array of six photographs, one of which was the photograph of QUINONES (the "Quinones Photograph Array"). I showed the Quinones Photograph Array to CW-1. CW-1 identified the photograph of QUINONES as the person whom CW-1 knew as Big T, referenced above in paragraph 4.

11. I obtained a photograph of SONIA BROWN, a/k/a "Sonia Pagan," the defendant, from the DMV, and prepared a photograph array of six photographs, one of which was the photograph of BROWN (the "Brown Photograph Array"). I showed the Brown Photograph Array to CW-1. CW-1 identified the photograph of BROWN as the person whom CW-1 knew as the Niece, referenced above in paragraph 4.

12. I showed the Brown Photograph Array to CW-2, who identified the photograph of SONIA BROWN, a/k/a "Sonia Pagan,"

the defendant, as the person whom CW-2 knew as the Niece, referenced above in paragraph 5.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of WILFREDO PAGAN, a/k/a "Cabeza," RAMON QUINONES, a/k/a "Big T," and SONIA BROWN, a/k/a "Sonia Pagan, the defendants, and that they be imprisoned or bailed, as the case may be.

VINCENT J. NOBLE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
18th day of July 2013

HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York